**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| JDL DEVELOPMENT IX, LLC, JDL | ) | |
| CONTRACTORS, LLC, and DEARBORN-ELM | ) | |
| CONDOMINIUM ASSOCIATION | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through counsel, Lewis Brisbois

Bisgaard & Smith, LLP and for its Complaint for Declaratory Judgment against Defendants, JDL

Development IX, LLC, JDL Contractors, LLC, and Dearborn-Elm Condominium Association,

alleges, states and avers:

**JURISDICTION AND VENUE**

1.      Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C.

§1332(a)(1).

2.      Plaintiff Nautilus is an Arizona insurance company, with its principal place of

business at 7233 East Butherus Drive, Scottsdale, Arizona 85260.

3.      Defendant, JDL Development IX, LLC ("JDL Development"), is an Illinois limited

liability company with its principal place of business located in Chicago, Cook County, Illinois.

4.      Defendant JDL Contractors, LLC ("JDL Contractors"), is an Illinois limited liability

company with its principal place of business located in Chicago, Cook County, Illinois.

4828-2838-2470.1                                    1

5.      Jim Letchinger is the owner and member of JDL Development and JDL Contractors. Jim Letchinger is a citizen of the State of Illinois.

6.      Defendant Dearborn-Elm Condominium Association (the "Association") is an Illinois Not-For-Profit Association with its principal place of business in Chicago, Cook County, Illinois.  Dearborn-Elm Condominium Association is joined in this suit as a necessary party defendant.

7.      Nautilus brings this action to obtain a declaratory judgment finding that Nautilus has no duty to defend and, therefore, no duty to indemnify JDL Development or JDL Contractors in connection with a lawsuit filed in the Circuit Court of Cook County, Illinois under the caption, *The Dearborn-Elm Condominium Association v. JDL Development IX, LLC, et al*, Case No. 07 L 008739 (the "Association Lawsuit").  A true and correct copy of the Second Amended Complaint filed in the Association Lawsuit is attached hereto and incorporated herein as Exhibit A.

8.      The Association's Second Amended Complaint seeks damages in excess of $1,000,000.

9.      Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff, Nautilus, on the one hand, and all Defendants on the other hand; and (b) the amount in controversy, including the potential costs of both defending and indemnifying JDL Development and JDL Contractors substantially exceeds $75,000.

10.     Venue is appropriate under 28 U.S.C. § 1391 because many of the acts – *i.e.*, the making of the insurance contract at issue and the alleged damage to the building at issue in the underlying suit – which form the basis of this action occurred in the Northern District of Illinois.

## THE ASSOCIATION LAWSUIT

11.     In June 2002, JDL Development and JDL Contractors first became aware that there was standing water on several of the balconies at the Dearborn-Elm Project.

12.     On or before July 29, 2004, JDL Development and JDL Contractors were informed that the Association was considering filing a lawsuit against them based upon alleged defects at the Dearborn-Elm building, including water infiltration allegedly caused by drainage problems on the building's balconies and terraces.

13.     On April 30, 2007, counsel for the Association sent JDL Development a letter entitled, "Notice of Claim," stating that the building's terraces were defective and causing both the common elements and units to experience significant water infiltration.  (See Exhibit B).

14.     Nautilus first received notice from JDL Development of both the incidents for which JDL is seeking coverage and the Association's claim in May 2007.

15.     On August 20, 2007, the Association filed the Association Lawsuit against JDL Development and JDL Contractors.

16.     On March 12, 2010, a Second Amended Complaint (Exhibit A) was filed in the Association Lawsuit.

17.     The Second Amended Complaint contains the following relevant allegations:

    a.  The Property is improved by a high-rise residential building constructed in or about 2002 and 2003 ("Building").

    b.  As the developer of the Project, Developer directed and supervised all the day-to-day activities and operations thereof.

    c.  Upon information and belief, Contractor was hired by Developer as the general contractor for the Project.

    d.  On or about May 24, 2007, Klein and Hoffman, Inc. ("K & H"), issued a report ("Defect Report") commissioned by the Association regarding the *Terrace Decks* ("Terraces") and the *Balconies* ("Balconies") at the Property.

e. The Defect Report disclosed that the defective Terraces and the Balconies have caused water infiltration and damage to the Building.

f. Specifically, the Terraces are defective because they were improperly constructed so that they were pitched towards the Building, not away from the Building, thereby causing water to pool thereon and to infiltrate the common elements of the Building and certain condominium units.

g. The terraces on the fourth (4th), eleventh (11th), fourteenth (14th), seventeenth (17th), and eighteenth (18th), floors all require extensive repair and remediation due to these construction defects.

h. Similar to the pitch problems with the Terraces, the Balconies, which are tiled like the "tiled terraces," are also improperly pitched, causing water incursion into the common elements of the Building and certain condominium units.

i. Thirty two (32) specific balconies requiring repair and remediation have currently been identified, consisting of a total area of six thousand two hundred fifty two (6,252) square feet.

j. Furthermore, the spigots leading to each of the Terraces were improperly installed and insulated, causing the pipes to freeze during the winter months.

k. As a result of this defective condition, water pipes on the fourteenth (14th) floor froze and burst, resulting in substantial water incursion to the common elements of the Building and at least fifteen (150 condominium units causing an estimated One Million Dollars ($1,000,000.00) in damages.

l. Substantial damage is occurring to the electrical wiring in the penthouse unit at the Building due to elevated temperatures in the electrical conduit caused by the hot water boilers.

m. This condition is caused by unsatisfactory and substandard coordination of construction of the Building, the failure to adhere to standard construction practices which require that electrical conduit not be embedded in a slab below boilers, and hat further additional steps be taken to divert excessive heat caused by boilers away from electrical conduit.

n. In addition, the Association was forced to replace a number of its HVAC systems, including its cooling tower fan motor, Trance compressor unit, and multiple exhaust fans due to the improper installation of related

systems and a subsequent failure to balance these systems with the air flow of the Building.

o. The Building requires extensive repairs and remediation related to the water infiltration and resulting damage caused by the defective Terraces and Balconies, as well as the damage related to the Additional Defects.

p. Defendants knew, or should have known, of the water infiltration and resulting damage caused by the defective Terraces and Balconies, as well as the damage related to the Additional Defects.

q. As a direct and proximate result of Developer's breach of its implied warranties, Plaintiff has been damaged in an amount in excess of One Million Dollars ($1,000,000.00), which represents the cost to repair, remediate, and replace, the physical damage to the Building, and its components, related to the water incursion and other serious problems caused by the defective Terraces and Balconies, as well as the Additional Defects.

18.     The Second Amended Complaint includes the following counts against JDL Development: (1) Breach of Fiduciary Duty; (2) Breach of Implied Warranties; (3) Common Law Fraud; (4)Violation of Illinois Consumer Fraud and Deceptive Business Practice Act, based on failures to disclose defects and misleading statements; and (5) Third-Party Beneficiary/Breach of Construction Contract.  The Second Amended Complaint also contains a count of Breach of Implied Warranties – Third Party Beneficiary against JDL Contractors.

## NAUTILUS POLICIES

19.     Nautilus issued the following policies to JDL Development and JDL Contractors:

a. Commercial Lines Policy No. NC142271, effective from April 3, 2001 to April 3, 2002 (the "01-02 Policy").  The Limits of Insurance are $1,000,000 Each Occurrence and $2,000,000 General Aggregate.  A true and correct copy of the 01-02 Policy is attached hereto as Exhibit C.

b. Commercial Lines Policy No. BN000014, effective from April 3, 2002 to April 3, 2003 (the "02-03 Policy").  The Limits of Insurance are $5,000,000 Each Occurrence

and $5,000,000 General Aggregate.  A true and correct copy of the 02-03 Policy is attached hereto as Exhibit D.

    c.  Commercial Lines Policy No. BN213265, effective from March 31, 2003 to March 31, 2004 (the "03-04 Policy").  The Limits of Insurance are $5,000,000 Each Occurrence and $5,000,000 General Aggregate.  A true and correct copy of the 03-04 Policy is attached hereto as Exhibit E.

    d.  Commercial Lines Policy No. BN322572, effective from March 31, 2004 to March 31, 2005 (the "04-05 Policy").  The Limits of Insurance are $5,000,000 Each Occurrence and $5,000,000 General Aggregate.  A true and correct copy of the 04-05 Policy is attached hereto as Exhibit F.

20.  The Nautilus Policies contain the following insuring agreement:

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)  The "bodily injury" or "property damage" occurs during the policy period….

21.  The Nautilus Policies contain the following notice provision:

    **2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**
        a.  You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim….

      **b.**      If a claim is made or "suit" is brought against any insured, you must:

            **(1)**      Immediately record the specifics of the claim or "suit" and the date received; and

            **(2)**      Notify as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

      **c.**      You and any other involved insured must:

            **(1)**      Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"….

## COUNT I

### (Declaratory Judgment – Late Notice)

22.      Nautilus incorporates by reference paragraphs 1-21 above as if fully stated herein.

23.      JDL Development and JDL Contractors breached the terms of the Nautilus Policies by not notifying Nautilus as soon as practicable of the events giving rise to the Association's claims.

24.      As a result of JDL Development's and JDL Contractor's breach of the Nautilus Policies, Nautilus has no duty to defend or indemnify JDL Development or JDL Contractors in connection with the Association Lawsuit.

25.      An actual controversy exists between Nautilus, on the one hand, and JDL Development and JDL Contractors, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

WHEREFORE, Plaintiff, NAUTILUS INSURANCE COMPANY, respectfully requests this Honorable Court to declare and adjudge the controversy as follows:

A.      Declare that Nautilus has no duty to defend JDL Development or JDL Contractors in the underlying lawsuit;

B.      Declare that Nautilus has no duty to indemnify JDL Development or JDL Contractors for any loss or damages arising from the underlying lawsuit;

C.      Grant any other relief that this Honorable Court deems just and equitable under the circumstances, including the award of costs.

## COUNT II

### (Declaratory Judgment – Known Loss Doctrine)

26.      Nautilus incorporates by reference paragraphs 1-25 above as if fully stated herein.

27.      In June 2002, JDL Development and JDL Contractors knew that the Association and unit owners were alleging the existence of balcony defects that eventually formed one of the bases for the Association Lawsuit and knew that substantial water intrusion into the common elements and units resulted from such alleged defects.

28.      As a result, JDL Development and JDL Contractors knew or had reason to know that there was a substantial probability that they would suffer, or had already suffered, a loss with respect to their work on the subject property prior to the inception of the 03-04 and 04-05 Policies.

29.      The known loss doctrine, therefore, precludes any coverage or potential coverage for JDL Development or JDL Contractors under the 03-04 and 04-05 Policies in the Association Lawsuit.

30.      Nautilus has no duty to defend JDL Development or JDL Contractors in connection with the Association Lawsuit.

WHEREFORE, Plaintiff, NAUTILUS INSURANCE COMPANY, respectfully requests this Honorable Court to declare and adjudge the controversy as follows:

A.      Declare that Nautilus has no duty to defend JDL Development or JDL Contractors in the underlying lawsuit;

B.     Declare that Nautilus has no duty to indemnify JDL Development or JDL Contractors for any loss or damages arising from the underlying lawsuit;

C.     Grant any other relief that this Honorable Court deems just and equitable under the circumstances, including the award of costs.

Respectfully submitted,

Nautilus Insurance Company

By:  __s/ Perry M. Shorris_____
         One of Its Attorneys


Perry M. Shorris, Esq. (ARDC No.: 6216843)
Kelly M. Ognibene, Esq. (ARDC No.: 6297327)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois  60661
Telephone:  312.345.1718
Facsimile:  312.345.1778