IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | No. 10 C 3435 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| JDL DEVELOPMENT, IX, LLC, JDL ) | |
| CONTRACTORS, LLC, DEARBORN-ELM ) | |
| CONDOMINIUM ASSOCIATION, NAUTILUS ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| FIREMAN'S FUND INSURANCE COMPANY ) | |
| OF OHIO, ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | |
| ) | |
| NAUTILUS INSURANCE COMPANY, ) | |
| DEARBORN-ELM CONDOMINIUM ) | |
| ASSOCIATION, an Illinois not-for-profit ) | |
| corporation, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| DEARBORN-ELM CONDOMINIUM ) | |
| ASSOCIATION, an Illinois not-for-profit ) | |
| corporation, ) | |
| ) | |
| Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NAUTILUS INSURANCE COMPANY, an ) | |
| Illinois corporation, FIREMAN'S FUND ) | |
| INSURANCE COMPANY OF OHIO, ) | |
| ) | |
| Counter-Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nautilus Insurance Company brought this action seeking a declaration that it has no duty to defend or indemnify its insureds, JDL Development, IX, LLC and JDL Contractors (jointly "JDL") in connection with a lawsuit filed against JDL in the Circuit Court of Cook County, Illinois by defendant-counterplaintiff Dearborn-Elm Condominium Association (the "Association"). JDL has defaulted, but the Association, as a third party beneficiary of the general contractor liability insurance policies issued by plaintiff to JDL, has assumed the burden of establishing that the Association's lawsuit is covered by the policies. The parties have filed cross-motions for summary judgment supported by a joint statement of undisputed facts. For the reasons described below, plaintiff's motion for summary judgment is granted, the Association's motion for summary judgment is denied, and the court declares that plaintiff has no duty to defend or indemnify JDL in connection with the Association's lawsuit.

## **BACKGROUND**

Plaintiff Nautilus is an Arizona insurance company. JDL Development and JDL Contracting are Illinois limited liability companies located in Chicago. Jim Letchinger is the owner and member of JDL. The Association is a not-for-profit association and was joined in the instant action as a necessary party defendant.

The property in question is improved by a high-rise residential building constructed in or about 2002-03 by JDL. Plaintiff issued a series of one year commercial line insurance policies to JDL starting effective April 3, 2001, through March 31, 2005. The policy limits were $1 million per occurrence and $2 million general aggregate for the 01-02 policy, and $5 million each occurrence and $5 million general aggregate for the 02-03, 03-04 and 04-05 policy periods. The policies contain the following provisions:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
(2) The "bodily injury" or "property damage" occurs during the policy period . . . .

The policies require the insured (JDL) to give notice of an occurrence "as soon as practicable." Specifically, the policies provide:

2. Duties in the Event of Occurrence, Offense, Claim or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim . . . .

b. If a claim is made or "suit" is brought against any insured, you must:
(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" . . . .

Finally, the Nautilus policies define "occurrence" to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined as physical injury to tangible property, including all resulting loss

3

of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

At least as early as September 2003, the unit owners in the condominium building began experiencing problems with their units. On September 23, 2003, Louis Levinson from the law firm of Friend, Levinson & Bergal sent a four page fax to Robert Stone of JDL detailing defects and damages in his client's Linda Szper's unit. The fax included a letter from Szper identifying problems with the balcony, including bubbling of the coating and that the balconies in the buildings had not been designed appropriately for "water run-off." The letter contained a list of damages, including water entering the unit from above, a tear in the roof and a rooms sustaining water damage needing to be checked and certified with respect to mold. The letter indicated that "we do not agree, nor will we accept that any current or future damage to the interior of our unit (caused by the roof leakage) should be an insurance issue. It is a developer issue and responsibility."

On January 16, 2004, Letchinger sent a letter to three of JDL's contractors indicating "as you are all aware, Units in the Building are expensive First Class Units. It is our hope that you can remedy this situation without the necessity of litigation." Letchinger wrote the letter and thought that the basis for possible litigation against the contractors was "lack of cooperation from the contractors to solve what we felt was something that needed to be addressed."

Also on January 16, 2004, unit owner Richard Erickson sent a letter to Stone indicating:

> In early December 2003, there was a water leak in our unit, (902), caused by the installation of crown molding done under JDL's authorization and supervision. Your staff arranged for the repair of the damaged [sic] caused in our unit. The repair was recently completed with marginal quality. Prior to the completion of repair I expressed concern to your staff that the wood floor in the affected area seemed to have developed a degree of warp. Although this is not grossly visible

4

now, I am concerned about the long term effect if the warp should progress. Also, I would like to notify you that our balcony has poor drainage, resulting in some water-pooling problem. I understand that this problem is also common to some of the other units and JDL is addressing a long-term resolution with the Condo Board.

On June 10, 2004, David Nelson, the President Pro Tempori of the Association's Board of Directors sent a letter to Stone indicating:

> The Dearborn-Elm Condominium Association Board of Directors met recently to discuss the status of the numerous terraces which have inadequate drainage. It is the Board members' continued belief that JDL is responsible for and should correct inadequate drainage design and construction and provide "original finish" surfaces on all balconies/terraces experiencing this problem, all at JDL's cost. In addition the Board may seek independent inspection of terrace drainage prior to final acceptance.
>
> Since JDL has been aware of this nearly building-wide problem since at least last fall, I expect you have given thoughtful consideration to what you will and will not do. It is important that another nine months (or more) do not pass while the residents of one of your showcase buildings experience standing water, growing algae and fungus but a step away from their inside living areas.

The following month, on July 29, 2004, Wolin-Levine, Inc. sent a fax to Stone that included the minutes of the Association's July 21, 2004, annual board meeting. The first item listed in the open forum section of the minutes stated "(A) Weigh legal action against JDL vs. cost of building repairs."

The Association commissioned Klein & Hoffman, Inc. to issue a defect report on the building. That report, issued on May 24, 2007, indicates that the terraces and balconies are defective because they were improperly designed and constructed causing water infiltration and damage to the building. One month before that report was issued, on April 30, 2007, the Association had sent JDL a letter entitled "Notice of Claim," stating that the terraces were

5

defective causing both the common elements and units to experience significant water damage. In May 2007 JDL gave notice to plaintiff of the Association's Notice of Claim.

## DISCUSSION

A duty to defend arises if the complaint's allegations fall within or potentially within the coverage provisions of the policy. Viking Construction Mgmt., Inc. v. Liberty Mutual Insurance Co., 358 Ill.App.3d 34 (1st Dist. 2005). To determine whether the insurer has a duty to defend the insured, the court looks to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy. Fireman's Fund Insurance Co. v. Pierre-Louis, 367 Ill.App.3d 790, 793 (1st Dist. 2006). The underlying complaint is to be construed liberally with doubts and ambiguities construed in favor of the insured. Lyons v. State Farm Fire & Casualty Co., 349 Ill.App.3d 404, 407 (5th Dist. 2004).

Plaintiff has moved for summary judgment on two grounds. First, it argues that the complaint in the Association lawsuit does not allege "property damage" caused by an "occurrence." Next, it argues that even if the complaint seeks recovery for damage covered by the policies, JDL failed to give plaintiff notice of the allegations and/or claims as soon as practicable as required by the policies. Plaintiff is correct on both accounts.

First, the operative complaint in the Association lawsuit seeks recovery for the cost to repair, remediate and replace the physical damage to the building and its components, related to the water incursion and other serious problems caused by the defective terraces and balconies, as well as the additional defects. The complaint contains no allegations that any personal property or property other than the structure was damaged.

The policies cover "property damage" caused by an "occurrence." An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Property damage is defined as "physical injury to tangible property, including all resulting loss of use of that property. The policy does not define accident, but it has been defined by the courts as "an unforced occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character. <u>Viking Construction</u>, 358 Ill.App.3d at 42. Thus, Illinois courts generally recognize that the "natural and ordinary" consequences of an act are not an accident or occurrence. <u>Id</u>. at 53. Under this theory, defective construction resulting in damage to the structure does not constitute an accident or occurrence. <u>Id</u>. As noted in <u>Viking Construction</u>, it has been generally held that a "CGL [Contractor's general liability] policy will not cover a general contractor's suit for breach of contract and there is no occurrence when a subcontractor's defective workmanship necessitates removing and repairing work. <u>Id</u>. at 42.

The Association does not argue that structural damage alone is not covered, but argues instead that the complaint seeks recovery for damage to the windows and doors of the building as well as damage to the terraces, individual unit's wood flooring and door sills. Thus, the Association argues that the alleged construction defects qualify as an occurrence because they damaged something other than the project itself. <u>Pekin Insurance Co. v. Richard Marker Assoc., Inc.</u>, 289 Ill.App.3d 819, 823 (2d Dist. 1997). This damage alleged by the complaint, however, constitutes damage to the structure. To qualify as an occurrence, "there must be damage to other materials not furnished by the insured." <u>CMK Dev. Corp. v. West Bend Mutual Ins. Co.</u>, 395 Ill.App.3d 830, 842 (1st Dist. 2009)(<u>quoting</u> <u>Richard Marker</u>, 289 Ill.App.3d at 822)). Because

7

the alleged damage is to and the recovery sought is for repair to materials furnished by JDL, there is no occurrence alleged and no coverage or duty to defend under the policies.

Moreover, even if the complaint could be construed to allege an occurrence, JDL was made aware of the problems as early as 2003, and more specifically in January 2004. By October 2003, JDL had considered litigation against one or more of its contractors. By June 2004, the Association was telling JDL that it believed that JDL was responsible for and should correct inadequate drainage design and construction. By July 29, 2004, JDL was put on notice that the Association was weighing legal action against it. Nonetheless, JDL did not give notice to plaintiff of the Associations allegations until May 2007, and then only after it had received the Notice of Claim from the Association.

The policy required JDL to notify plaintiff of an occurrence or offense which may result in a claim "as soon as practicable," after becoming aware by any means that property damage has occurred, or has begun to occur. Under Illinois law, "as soon as practicable" has been held to mean that the insured must provide the insurer notice within a reasonable time. Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc., 313 Ill.App.3d 457, 464 (1st Dist. 2000). Courts often look at: (1) the specific language of the policy notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer, to determine if notice has been given within a reasonable time. Country Mutual Insurance Co. v. Livorsi Marine, Inc., 222 Ill.2d 303, 313 (2006).

In the instant case, factors (2), (3) and (4) favor plaintiff, while none favor JDL. Stone, who was in charge of all insurance matters for JDL, understood that JDL had an obligation to notify plaintiff when there was an allegation of defective work, even before an official Notice of Claim was received or lawsuit filed. Yet, JDL failed to do so for over three years after first being notified of the potential claim. It did not even inquire as to potential coverage. Delays of as little as three months have been held to be unreasonable. See INA Insurance Co. of Illinois v. City of Chicago, 62 Ill.App.3d 80, 83 (1st Dist. 1978) (three months); Northbrook Property, 313 Ill.App. 3d at 464 (17 months); Equity General Insurance Co. v. Patis, 119 Ill.App.3d 232, 235 (1st Dist. 1983) (five months). Under the instant circumstances, the court concludes that JDL's three year delay in reporting the Association's allegations was unreasonable.

## CONCLUSION

For the reasons described above, the court grants plaintiff's motion for summary judgment, denies defendant Dearborn-Elm Condominium Association's motion for summary judgment and declares that plaintiff has no duty to defend or indemnify JDL in the underlying lawsuit.

**ENTER:** April 4, 2012

**Robert W. Gettleman**
**United States District Judge**